UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MARQUETTA JAMES,

                              Plaintiff,

                                                AMENDED COMPLAINT

                    -against-                   Jury Trial Demanded

BROOME COUNTY, CITY OF
BINGHAMTON, BROOME COUNTY
DISTRICT ATTORNEY'S OFFICE,
CITY OF BINGHAMTON POLICE
DEPARTMENT, CITY OF BINGHAMTON
FIRE DEPARTMENT, BROOME COUNTY
CORRECTIONAL FACILITY, DISTRICT ATTORNEY
MICHAEL A. KORCHAK, FIRST ASSISTANT
 DISTRICT ATTORNEY LUCAS FINLEY, FIRE
MARSHAL TIMOTHY O'NEILL, DET. AMANDA
MILLER, LT. NICHOLAS GRISWOLD,
SGT. DANIEL FLANDERS, CAPTAIN CORY MINOR,
INVESTIGATOR GARY LASKOWSKY,
INVESTIGATOR CARL PETERS and
JOHN/JANE DOE NOS. 1 THROUGH 20, being unknown
employees of Broome County, and City
of Binghamton in their individual and official
capacities, who were involved in the investigation,
prosecution and detention at issue,

                              Defendants.
-------------------------------------------------------------x

## NATURE OF THE ACTION

1.      This is an action to recover money damages arising out of the violation

of plaintiff's rights under the Constitution.

2.      The false arrest, wrongful imprison, and malicious prosecution, amongst

other constitutional violations stem from law enforcements' and the District Attorneys

Office's refusal to accept that the fire in the instant case was not the result of arson

-1-

but based upon a faulty boiler. Upon information and belief, based upon speculation that Marquetta James burned down a home at 159 Conklin Avenue in Binghamton, members of the Broome County District Attorney's Office and the Binghamton Police Department conspired with the Binghamton Fire Department to maliciously prosecute Ms. James, arresting her and putting her through over a year of wrongful confinement and needless and illegal criminal proceedings.

3.     The Defendants in the case at bar suffered from tunnel vision and refused to accept that no crime was committed, even in the face of an initial report from the Binghamton Fire Department that the cause of the fire was unknown. *See Final Report of the New York State Bar Association's Task Force on Wrongful Convictions*, Pg. 43-44 (April 4, 2009) (Early focus or "tunnel vision" occurs when investigators make a determination before evidence has been reviewed and witnesses have been interviewed.)

4.     Ms. James was accused of burning down 159 Conklin Avenue in the City of Binghamton. She was arrested on February 15, 2022, even though the Binghamton Fire Department, by way of Fire Marshall Timothy O'Neill and Lt. Nicholas Griswold, had concluded that the cause of the fire was unknown. *See* Exhibit A – Binghamton Fire Department 159 Conklin Avenue Fire Report. In fact, upon information and belief, Det. Amanda Miller and Investigator Carl Peters of the Binghamton Police Department arrested Ms. James on February15, 2022, for arson **before the fire had even ceased and a fire investigation began**. *See* Exhibit B – Felony Complaint.

5.     Later, upon information and belief, Fire Marshal Timothy O'Neill and

Lt. Griswold admittedly based any conclusion that the fire was caused intentionally on speculation and information provided to him from the District Attorney's Office and the Binghamton Police Department. The Binghamton Fire Department speculative findings are the only piece of evidence that indicated that the fire was started intentionally.

6.     However, upon information and belief, a member of the Binghamton Fire Department was forced to admit that his conclusions for the prosecution and trial testimony on direct failed to consider evidence that the fire that destroyed 159 Conklin Avenue was caused by something other than intent. Upon information and belief, it was this testimony that led to Ms. James being acquitted.

7.     Collectively, the Defendants' reckless and willful disregard for the truth resulted in Ms. James's wrongful arrest, confinement, and malicious prosecution. Ms. James was only released after a jury acquitted her of all charges on April 21, 2023. Ms. James was falsely arrested, subjected to roughly 14 months of wrongful imprisonment, during which time she was misdiagnosed with diabetes and injected with insulin, and malicious prosecution based upon the misconduct at the hands of the Binghamton Police Department, the Binghamton Fire Department, and the Broome County District Attorney's Office.

<u>JURISDICTION AND VENUE</u>

8.     This action is brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

9.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

10.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

11.    This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

### JURY DEMAND

12.    Plaintiff demands a trial by jury in this action.

### PARTIES

13.    Plaintiff Marquetta James ("plaintiff" or "Ms. James") is a resident of the State of Connecticut.

14.    Defendant City of Binghamton (herein referred to as "City) is a municipal corporation organized under the laws of the State of New York.  It operates the City of Binghamton Police Department (herein referred to as "BPD"), which is a department or agency of defendant City of Binghamton responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein. The City also operates the City of Binghamton Fire Department (herein referred to as "BFD"), which is a department or agency of defendant City of Binghamton responsible for the appointment, training, supervision, promotion and discipline of firemen, fire marshals, investigators and supervisory officers withing the BFD, including the individually named defendants herein.

15.    Defendant Broome County is a municipal corporation organized under

the laws of the State of New York. It operates the Broome County District Attorneys Office (herein referred to as "BCDAO") and Broome County Correctional Facility (herein referred to as "BCCF"), which are departments or agencies of defendant Broome County responsible for the operation of the BCCF and BCDAO. The BCCF and the BCDAO are responsible for the appointment, training, supervision, promotion and discipline of correction officers and district attorneys, including the individually named defendants herein.

16.     Defendant District Attorney Michael A. Korchak was at all times relevant to this Complaint the duly elected District Attorney of Broome County, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of Binghamton, County of Broome, and the State of New York. He is being sued in his individual and official capacities.

17.     At all relevant times, the Fire Chief (the "Fire Chief"), including Alan Gardiner, was and is an appointed officer of City of Binghamton responsible for the BFD, an agency funded by Defendant the City of Binghamton.

18.     At all relevant times, the Chief of Police (the "Police Chief"), including Joseph Zikuski, was and is an elected officer of City of Binghamton responsible for the BPD, an agency funded by Defendant the City of Binghamton.

19.     Defendant Assistant District Attorney Lucas Finley was at all times relevant to this Complaint a duly appointed and active Assistant District Attorney, acting under color of law and in his individual capacity within the scope of employment

pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of Binghamton, County of Broome, and the State of New York. He is being sued in his individual and official capacities.

20.    Defendant Detective Amanda Miller ("Miller"), at all times relevant herein, was an officer, employee and agent of the BPD. Defendant Miller is sued in her individual and official capacities.

21.    Defendant Captain Cory Minor ("Minor"), at all times relevant herein, was the captain, employee and agent of the BPD. Defendant Minor is sued in his individual and official capacities.

22.    Defendant Investigator Carl Peters ("Peters"), at all times relevant herein, was an investigator, employee and agent of the BPD. Defendant Peters is sued in his individual and official capacities.

23.    Defendant Investigator Gary Laskowsky ("Laskowsky"), at all times relevant herein, was an investigator, employee and agent of the BPD. Defendant Laskowsky is sued in his individual and official capacities.

24.    Defendant Sergeant Daniel Flanders ("Flanders"), at all times relevant herein, was a sergeant, employee and agent of the BPD. Defendant Flanders is sued in his individual and official capacities.

25.    Defendant Fire Marshal Timothy O'Neill ("O'Neill"), at all times relevant herein, was a fire marshal, investigator, employee and agent of the BFD. Defendant O'Neill is sued in his individual and official capacities.

26.    Defendant Lieutenant Nicholas Griswold ("Griswold"), at all times

relevant herein, was a lieutenant, fire marshal, investigator, employee and agent of the BFD.  Defendant Griswold is sued in his individual and official capacities.

27.     At all times relevant defendants John and Jane Doe 1 through 20 were police officers, detectives, supervisors, corrections officers, attorneys or firemen employed by the BPD, BFD, BCCF, and the BCDAO.  Plaintiff does not know the real names or shield numbers of defendants John and Jane Doe 1 through 20.

28.     At all times relevant herein, defendants John and Jane Doe 1 through 20 were acting as agents, servants and employees of the City of Binghamton, Broome County, the BPD, BFD, BCCF, and the BCDAO.  Defendants John and Jane Doe 1 through 20 are sued in their individual and official capacities.

29.     At all times relevant herein, all individual defendants were acting under the color of state law.

## STATEMENT OF FACTS

30.      On or about February 15, 2022, at approximately 7:18AM, a fire broke out at 159 Conklin Avenue in Binghamton. An investigation ensued by the City of Binghamton Police Department and the City of Binghamton Fire Department.

31.     Without any factual basis, Defendant Minor informed Defendant Miller that the fire was caused by arson.

32.     On February 15, 2022, Defendant Peters filled out a false felony complaint, swearing to the fact that Marquetta James set the fire at 159 Conklin Avenue, Binghamton, NY, in violation of NY PL § 150.15. *See* Exhibit B. Notably, there was absolutely no evidence that supported the factual averments that Defendant

Peters swore to. In fact, the felony complaint that Defendant Peters affirmed and swore to was false. <u>All of the named and unnamed defendants</u> were aware that Defendant Peters swore to a false complaint.

33.    Prior to the fire being extinguished and the investigation being completed, Ms. James was arrested and charged with arson in the second degree. *See* Exhibit B; Exhibit C – Expert Report of Marc Fennell.

34.    The BFD finalized its investigation and concluded that the cause of the fire was undetermined. *See* Exhibit A. In fact, the BFD found no evidence that the fire was intentionally set during its investigation.

35.    Defendants Griswold and O'Neill were coached and prompted to find that the fire began on the back porch of the third floor by, upon information and belief, defendants Korchak, Finley, Miller, Minor, Peters, Flanders and Laskowsky. Griswold and O'Neill never even entered the building to conduct an investigation because they were unable to based upon the destruction of the structure. Griswold and O'Niell, at the behest of the other named defendants, fabricated their report to fit a narrative **that the fire <u>could have been the result of arson</u>.**

36.    As Ms. James expert clearly states over and over again in his expert report, the findings of Griswold and O'Neill were unreliable and the product of external influences, such as the other named defendants.

37.    However, pursuant to GML § 204-D, the fire was still listed as undetermined. As such, there was no probable cause to believe that anyone intentionally started the fire, let alone Ms. James.

38.    Defendants Korchak, Finley, Peters, Miller, Laskowsky, Flanders, and Minor were aware that it was the duty of the Fire Chief, pursuant to GML § 204-D, to determine the cause of a fire. Again, here, the BFD determined that the cause was unknown.

39.    In continuing with tunnel vision exhibited by the initial investigation, the Broome County District Attorney's Office and the BPD, specifically defendants Miller, Minor, Peters, Korchak and Finley, continued with the prosecution even in the face of evidence that this fire was not the result of arson. As such, there was neither evidence to arrest nor prosecute.

40.    On February 28, 2022, in an effort to stymie Ms. James' attempts to make bail, defendant Finley, at the direction of defendant Korchak, withheld *Brady* material from the Binghamton City judge during the preliminary hearing. The City judge was never informed that the Fire Chief never determined that the fire was the result of arson. Therefore, Ms. James was held without probable cause. Defendant Korchak and defendant Finley were obligated to decline to prosecute Ms. James. Likewise, the BPD, including defendants Minor, Peters, Flanders, Miller, and Laskowsky, were obligated to drop the charges.

41.    There was no evidence to move forward.

42.    Even in the face of the BFD's conclusion regarding the cause of the fire, the BPD and BFD concluded that the fire was the result of arson based upon speculation. *See* Exhibit A; Exhibit C. Specifically, Defendant Griswold testified before the grand jury that he was provided information by the investigators, presumably the

named defendants from the BPD and the Broome County District Attorney's Office, to come to a determination that the fire was arson. In fact, defendant Griswold specifically testified that he did not come to his determination based upon his investigation of the fire but through outside sources. Defendant Griswold essentially admitted that he was coached into fabricating a finding that there was an arson in the case at bar.

43.    The Defendants, with reckless disregard for Ms. James rights, continued with the prosecution, all the while Ms. James sat in the BCCF being subjected to deplorable conditions for over a year.

44.    Ms. JAMES was found not guilty of arson on April 21, 2023, because of the forensic evidence that was available to the Defendants from the very beginning. Ultimately, over 14 months after her arrest, she was acquitted and released. During her time incarcerated, she was misdiagnosed with diabetes in the Broome County Correctional Facility.

45.    Within ninety days after the claim alleged in this Complaint arose, a written notice of claim was properly served on the Defendants. *See* Exhibit D – Notice of Claim.

46.    At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

47.    This action has been commenced within one year and ninety days after the occurrence of the events upon which the claims are based.

48.    Ms. James suffered damage as a result of Defendants' actions.  Plaintiff

was deprived of her liberty (she was incarcerated for over 14 months), was maliciously prosecuted, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, an unlawful search and damage to her reputation.

## FIRST CLAIM
## UNLAWFUL DETENTION AND DEPRIVATION OF LIBERTY
## PURSUANT TO § 1983
## (Defendants Korchak, Finley, Miller, Griswold, O'Neill, Minor, Flanders and Peters)

49.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

50.    Defendants violated the Fourth and Fourteenth Amendments because they arrested and detained Plaintiff without probable cause, which was affirmed in Plaintiff's acquittal and was detailed in both the BFD's report (Exhibit A) and Marc Fennell's report (Exhibit C). The Defendants had absolutely no probable cause to arrest Ms. James as a crime **did not happen**. Ms. James also suffered over 1 year of unlawful detention, from February 15, 2022 until her acquittal on April 21, 2023.

51.    During the time incarcerated in the BCCF, Ms. James was subjected to deplorable conditions and misdiagnosed with diabetes.

52.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## SECOND CLAIM
## FALSE ARREST AND FALSE IMPRISONMENT PURSUANT TO § 1983
## (Defendants Korchak, Finley, Miller, Griswold, O'Neill, Minor, Flanders and Peters)

53.    Plaintiff repeats and realleges each and every allegation as if fully

set forth herein.

54.    The Defendants fabricated evidence to arrest Ms. James.

55.    Ms. James was/is completely innocent and the evidence, from the very beginning, proved that the fire at 159 Conklin was not caused by arson.

56.    There was never evidence that a crime was committed, and as such, there was no probable cause to arrest Ms. James, arguable or otherwise.

57.    Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

58.    Plaintiff was conscious of her confinement.

59.    Plaintiff did not consent to her confinement.

60.    Plaintiff's confinement was not otherwise privileged.

61.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### THIRD CLAIM
### MALICIOUS PROSECUTION AND
### ABUSE OF PROCESS PURSUANT TO § 1983
### (Defendants Korchak, Finley, Miller, Griswold, O'Neill, Minor, Flanders and Peters)

62.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

63.    Knowing that any colorable cause did not exist, all of the Defendants herein acted in concert and conspired with the other named defendants and other unidentified defendants, Jane and John Does, to use any means, no matter how unlawful or coercive, to get an indictment and take this matter to trial.

-12-

64.     Defendants O'Neill and Griswold found that the cause of the fire was undetermined. However, at the behest of defendants Korchak, Finley, Miller, Minor, Flanders and Peters, O'Neill and Griswold contoured and fabricated their findings to fit the narrative that an arson was possible.

65.     In fact, Det. Miller specifically testified at James' preliminary hearing that she was told that the fire at 159 Conklin Avenue was an arson by her captain, Defendant Minor. Upon information and belief, defendants Korchak and Finley instructed defendant Peters to file a felony complaint.

66.     In contravention of GML § 204-D, it was defendant Minor and Korchak that determined that the fire was an arson with absolutely no evidence to support such charges.

67.     In fact, it was the BFD's conclusion in their report that the cause of the fire was undetermined. However, Defendant Griswold testified before the grand jury that the BFD came to the conclusion that the fire was caused by arson based upon speculation using evidence outside of the physical evidence found at the scene. *See also* Exhibit C. His testimony was a clear indication that he was coached by the prosecutor defendants in this case to come to a **speculative** conclusion that this was arson to sustain an indictment.

68.     In fact, the indictment was procured by <u>fraud based upon the actions of all the named defendants</u>.

69.     Yet still, the named and unnamed defendants instituted a criminal action against Marquetta in the face of clear evidence that no crime had been

-13-

committed at all.

70.    These illegal and unconstitutional means included, but were not limited to, presenting unreliable evidence before the grand jury and, ultimately, the trial jury and failing to conduct any meaningful investigation.

71.    At every juncture, the Defendants herein misrepresented the evidence in order to prosecute Marquetta. Ultimately, by the Grace of God, the jury concluded that Ms. James was not guilty of arson based, upon information and belief, in part, upon the BFD Defendants testimony on cross examination that the cause of the fire was undetermined.

72.    The foregoing violations of Plaintiff's federal constitutional rights by the Defendants and their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the initiation and continuation of Plaintiff's criminal prosecution, her loss of liberty, and her other injuries and damages.

73.    The forgoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendants' employment and authority.

74.    Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

75.    By reason of the foregoing, the Defendants are liable to plaintiff, under 42 U.S.C. 1983, for compensatory and for punitive damages.

**FOURTH CLAIM**
**STATE LAW ABUSE OF POWER**
**(Defendants Korchak, Finley, Miller, Griswold, O'Neill, Minor, Flanders and Peters)**

76.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

77.     Defendants, individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, employed regularly issued criminal legal process against Plaintiff.

78.     Specifically, they prosecuted Ms. James knowing full well no crime had been committed as the cause of the fire was not a result of human causation.

79.     Defendants used such process in a perverted manner to obtain a collateral objective outside the legitimate ends of the process used, namely, to gain an unlawful arrest and conviction of Plaintiff. Defendants knew, believed, and intended that this evidence would later be used in court against Plaintiff at his criminal trial, and which were so used.

80.     Defendants did so with an intent to do harm to Plaintiff, with actual malice, and without excuse or justification.

81.     By virtue of the foregoing, Plaintiff was caused the actual and special damages identified in the subsection labeled Plaintiff's Damages.

**FIFTH CLAIM**
**STATE LAW FALSE IMPRISONMENT AND FALSE ARREST**
**(Defendants Korchak, Finley, Miller, Griswold, O'Neill, Minor, Flanders and Peters)**

82.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

83.    By their conduct, as described herein, the individual defendants are liable to plaintiff for falsely imprisoning and falsely arresting plaintiff.

84.    Plaintiff was conscious of her confinement.

85.    Plaintiff did not consent to her confinement.

86.    Plaintiff's confinement was not otherwise privileged.

87.    Defendants City of Binghamton and Broome County, as an employer of the individual defendant officers, fire marshals, and prosecutors, are responsible for their wrongdoing under the doctrine of *respondeat superior*.

88.    As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiff sustained the damages alleged herein.

**SIXTH CLAIM**
**DENIAL OF CONSTITUTIONAL AND**
**STATUTORY RIGHT TO A SPEEDY TRIAL**
**(Defendants Korchak, Finley, Miller, Griswold, O'Neill, Minor, Flanders and Peters)**

89.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

90.    The individual defendants created false evidence against Plaintiff.

91.    The individual defendants forwarded false evidence to prosecutors in the Broome County District Attorney's office and individual prosecutors knew that this evidence was unreliable because they were front and center during the investigation, as they had the expert report concluded that the cause of the fire was undetermined from the BFD.

92.    In creating false evidence against plaintiff, and in presenting false

information to the Grand jury and jury, the individual defendants violated plaintiff's right to fair court proceedings and caused plaintiff to be subjected to over 1 year of incarceration and 1 year of unlawful legal proceedings in violation of the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

93.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

<b>SEVENTH CLAIM</b><br><b>Negligent Hiring, Training and Retention</b><br><b>(Broome County and City of Binghamton)</b>

94.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

95.     Defendants City of Binghamton and Broome County, through the BPD, BFD, BCDAO and the BCCF, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

96.     Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

97.     Upon information and belief, defendants City of Binghamton and Broome County knew or should have known through the exercise of reasonable diligence that the individual defendants were potentially dangerous.

98.     Upon information and belief, defendants City of Binghamton's and

-17-

Broome County's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

99.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
## FAILURE TO INTERVENE PURSUANT TO § 1983
**(Defendants Korchak, Finley, Miller, Griswold, O'Neill, Minor, Flanders and Peters)**

100.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

101.    Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

102.    Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

103.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## NINTH CLAIM
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER STATE LAW
## (ALL DEFENDANTS)

104.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

105.    Defendants engaged in a continuous patters of extreme and outrageous conduct directed at Plaintiff from February 15, 2022, on the date of her arrested, until

April 21, 2023, which was the date of her acquittal.

106.   Defendants engaged in that pattern of conduct with an intention to cause, or in reckless disregard of the substantial probability that it would cause, Plaintiff severe emotional distress.

107.   Specifically, defendants individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, while acting in an investigative or administrative capacity, completely ignored the reliable scientific evidence that the fire at 159 Conklin Avenue was not the result of human conduct. The BCCF's employees likewise acted in an egregious manner when Ms. James was misdiagnosed and treated for diabetes and was subjected to deplorable conditions within the BCCF.

108.   Plaintiff suffered severe emotional distress as a result of, and that was proximately caused by, the Defendants' aforementioned actions.

109.   By virtue of the foregoing, Plaintiff suffered the actual damages identified the above paragraphs.

110.   Defendants City of Binghamton, Broome County, City of Binghamton Police Department, Binghamton Fire Department, Broome County Correctional Facility, and Broome County District Attorney's Office is liable under the principle of respondeat superior.

**TENTH CLAIM**
**SUPERVISORY LIABILITY PURSUANT TO § 1983**
**(Defendants Korchak, Finley, Griswold, O'Neill, Minor, and Flanders)**

111.   Plaintiff repeats and realleges each and every allegation as if fully set

forth herein.

112.    The individual defendant assistant district attorneys, police officers, and members of the fire department acted with impunity in an environment in which they were not adequately trained, supervised, or disciplined by Defendant Korchak, Defendant Griswold, Defendant Finley, and Defendant Minor, and others, in this case and as a matter of practice.

113.    Defendant Korchak, Defendant Griswold, and Defendant Minor, and others, acted with gross negligence, recklessness, and/or deliberate indifference to the constitutional rights of citizens by failing to provide adequate training, supervision, and discipline of the defendant assistant district attorneys, fire marshalls or police officers, and thereby caused the individual defendant assistant district attorneys and police officers to deprive Marquetta James of her clearly established constitutional rights, including her rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process of law, and to a fair trial.

114.    Had Defendant Korchak, Defendant Griswold, and Defendant Minor, and others, not provided grossly inadequate training, supervision, and discipline of the defendant assistant district attorneys and police officers, these defendants would not and should not have fabricated inculpatory evidence, withheld exculpatory and impeachment evidence, and intentionally and maliciously caused Marquetta James to be arrested and prosecuted without probable cause. Defendant Korchak, Defendant Griswold, and Defendant Minor, and others, were directly involved in the investigation

of Marquetta James and directly supervised the specific investigative acts taken by the individual assistant district attorney and police officer defendants in this case.

115.    The grossly negligent, reckless, and/or deliberately indifferent conduct of Defendant Korchak, Defendant Griswold, and Defendant Minor, and others, under color of state law violated their clearly established duty, in 2022 through 2023, to supervise Defendants Finlay, Flanders, Peters, and Miller, and no reasonable District Attorney or Police Chief or other supervising prosecutor or police officer in 2022 through 2023 would have believed that grossly negligent, reckless, and/or deliberately indifferent supervision in the face of actual or constructive notice of misconduct by their subordinate officers was lawful.

116.    Marquetta James did not set the fire on February 15, 2022 at 159 Conklin in Binghamton. The prosecution finally terminated in Ms. James's favor on April 21, 2023, when the jury acquitted Ms. James after trial.

117.    As a direct and proximate result of these Defendants' actions, Marquetta James spent over a year wrongfully imprisoned and fighting patently false allegations and criminal charges, arrested, and subjected to a trial, and suffered the other grievous and continuing damages and injuries set forth above.

**ELEVENTH CLAIM**
*MONELL* CLAIM PURSUANT TO § 1983
(Against Defendant County of Broome for the Actions of the Broome County DA's Office and its employees)

118.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

119.    The Broome County District Attorney and his authorized delegates, at all relevant times, had final authority with respect to the training, supervision, discipline, and overall management of personnel employed by or assigned to the BCDAO with respect to all of the office's functions, including the investigation and prosecution of criminal cases, and constituted County policymakers for whose actions or omissions the County is liable.

120.    The District Attorney, at all relevant times, was and is an elected officer of the County, and the BCDA was and is substantially funded out of the County's budget.

121.    The District Attorney was and is designated a "local officer," rather than a "state officer," under New York Public Officers Law § 2.

122.    When dealing with issues of the administration of their office and their office's policies, the District Attorney and his assistant district attorneys are agents and employees of the Defendant County.

123.    Under Federal and New York State law, the County of Broome at all relevant times, was liable for torts committed by County officers and employees, including the District Attorney and his assistants.

124.    The County Attorney represents such officers and employees in judicial proceedings and indemnifies them because they are County officials.

125.    At the time of Ms. James's criminal trial, criminal defendants were entitled, under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, to be arrested and prosecuted only upon the existence of probable cause.

126.    Here, Ms. James was prosecuted through the use of fabricated evidence and without regard to the mandates of GML § 204-D, where it is the fire chief's duty to determine if a fire was caused by arson. It is a prosecutor's constitutional obligation, at all stages of a criminal prosecution, not to advance, rely on, or fail to correct misleading evidence or argument.

127.    At the time of Ms. James's trial in 2023, there were well-established rules of behavior for prosecutors during a pre-arrest investigation and at trial, particularly with respect to the need for probable cause to exist prior to agreeing to, directing, or advising that an arrest be effectuated. If serious enough, the violation of such rules would deprive a criminal defendant of their federal constitutional rights.

128.    These well-established rules prohibited prosecutors from agreeing to, directing, or advising that an arrest be effectuated in the absence of probable cause, or for any reason other than the existence of probable cause and to refrain from coaching witnesses and experts as was done in the case at bar with defendants Griswold and O'Neill. Furthermore, BCDAO failed to implement policies and procedures including training and supervision to ensure that criminal defendants like Plaintiff who are being investigated and charged by or through their offices would not have their constitutional rights violated.

129.    Here, Griswold testified before the grand jury that he was provided information to coax him into making a speculative finding of arson.

130.    The fire department's determination was "undetermined". Pursuant to GML § 204-D, that should have ended any criminal prosecution. But it did not.

131.    Upon information and belief, members of the BCDAO were not trained to handle arson investigations, and believed that they could circumvent the findings of the fire department.

132.    Then, Defendant Korchak, upon information and belief, instructed defendant Finley to prosecutor the case even though it was clear that that a criminal prosecution would violate Ms. James's constitutional rights.

133.    And that is exactly what happened. The BCDAO should have declined to prosecute the case.

134.    Korchak is the policy maker, as that term is described in law, at BCDAO.

135.    By virtue of the foregoing, Defendants are liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and her resultant injuries.

**TWELTH CLAIM**
***MONELL* CLAIM PURSUANT TO § 1983**
**(Against Defendant City of Binghamton for the Actions of the BPD and BFD and its employees)**

136.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

137.    The the Chief of Police of the BPD and the Fire Chief of BFD and their authorized delegates, at all relevant times, had final authority with respect to the training, supervision, discipline, and overall management of personnel employed by or assigned to the BPD and BFD with respect to all of the offices' functions, including the

investigation and prosecution of criminal cases and fires, and constituted City policymakers for whose actions or omissions the City is liable.

138.    The Fire Chief and Chief of Police, at all relevant times, was and is an appointed officer of the City, and the BFD and BPD were and are substantially funded out of the City's budget.

139.    The Fire Chief and Police Chief were and are designated a "local officer," rather than a "state officer," under New York Public Officers Law § 2.

140.    When dealing with issues of the administration of their office and their office's policies, the Fire Chief and Police Chief and their supervisors are agents and employees of the Defendant City.

141.    Under Federal and New York State law, the City of Binghamton at all relevant times, was liable for torts committed by City officers and employees, including the named defendants as employees of the BFD and BPD.

142.    The City Attorney represents such officers and employees in judicial proceedings and indemnifies them because they are City officials.

143.    At the time of Ms. James's criminal trial, criminal defendants were entitled, under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, to be arrested and prosecuted only upon the existence of probable cause.

144.    Here, Ms. James was prosecuted through the use of fabricated evidence and without regard to the mandates of GML § 204-D, where it is the fire chief's duty to determine if a fire was caused by arson. It is law enforcement's constitutional obligation, at all stages of a criminal prosecution, not to advance, rely on, or fail to

correct misleading evidence or argument.

145.    At the time of Ms. James's trial in 2023, there were well-established rules of behavior for members of the BFD and BPD during a pre-arrest investigation and at trial, particularly with respect to the need for probable cause to exist prior to agreeing to, directing, or advising that an arrest be effectuated. If serious enough, the violation of such rules would deprive a criminal defendant of their federal constitutional rights.

146.    These well-established rules prohibited police officers from agreeing to, directing, or advising that an arrest be effectuated in the absence of probable cause, or for any reason other than the existence of probable cause and to refrain from fabricating evidence, basing conclusions on speculation and unreliable evidence, coaching witnesses and experts as was done in the case at bar with defendants Griswold and O'Neill. Likewise, defendant Peters falsely swore to a criminal complaint that the fire at 159 Conklin was the result of arson, when there was no evidence that the fire started because of arson, let alone that Ms. James intentionally set the fire. Defendant Laskowski also misrepresented and fabricated his findings regarding whether there was evidence that the fire was a product of arson without even viewing the areas where he stated that the fire started. Furthermore, BPD and BFD failed to implement policies and procedures including training and supervision to ensure that criminal defendants like Plaintiff who are being investigated and charged by or through their offices would not have their constitutional rights violated.

147.    Here, Griswold testified before the grand jury that he was provided

information to coax him into making a speculative finding of arson. Moreover, Griswold came to an opinion without even conducting an investigation. His conclusion was admittedly based upon unreliable evidence and speculation. His report was largely false with regard to where the fire started because he could not even enter the structure to conduct an investigation.

148.    The fire department's determination was "undetermined". Pursuant to GML § 204-D, that should have ended any criminal prosecution. But it did not.

149.    Upon information and belief, members of the BPD were not trained to handle arson investigations, and believed that they could circumvent the findings of the fire department.

150.    Then, Defendant Minor, upon information and belief, instructed defendants Miller and Peters to file a criminal complaint the case even though it was clear that that a criminal prosecution would violate Ms. James's constitutional rights.

151.    And that is exactly what happened. The BPD should never have filed any charges against Ms. James.

152.    The fire chief and the police chief are the policy makers, as that term is described in law, at BFD and BPD.

153.    By virtue of the foregoing, Defendants are liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and her resultant injuries.

**THIRTEENTH CLAIM**
**42 U.S.C. § 1983 CIVIL RIGHTS CONSPIRACY**
**(Against All Defendants)**

154.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

155.    The Defendants, acting within the scope of their employment and under color of state law, agreed among themselves and with other individuals to act in concert in order to deprive Plaintiff of her clearly established Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process of law, and also deprived Plaintiff of his right to a fair trial.

156.    In furtherance of the conspiracy, Defendants engaged in and facilitated numerous overt acts, including, without limitation, the following:

· Falsely arresting and imprisoning Plaintiff, knowing that they lacked probable cause;

· Fabricating inculpatory evidence in expert reports;

· Committing, suborning and failing to correct perjury during hearings and trials.

157.    Plaintiff is completely innocent of arson. In fact, there is no evidence that the fire that occurred on February 15, 2022 at 159 Conklin was the result of arson. The prosecution finally terminated in Plaintiff's favor on April 21, 2023, when she was acquitted by a jury.

158.    As a direct and proximate result of these Defendants' actions, Marquetta James spent over 1 year incarcerated, wherein she was misdiagnosed with diabetes and given insulin injections, fought for over a year against patently false allegations

and criminal charges, arrested, and subjected to a trial, and suffered the other grievous and continuing damages and injuries set forth above.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated:       January 31, 2025
             Forest Hills, New York

JUSTIN C BONUS ATTORNEY AT LAW

*Justin Bonus*

Justin C. Bonus, Esq.
118-35 Queens Blvd, Suite 400
Forest Hills, NY 11375
347-920-0160
Justin.bonus@gmail.com

*Attorneys for Plaintiff*